IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.: 5:17-cv-00474-FL

|  |  |
|---|---|
| WILLIAM C. DILLON,<br><br>        Plaintiff,<br><br>   vs.<br><br>BDI PHARMA, INC., RICHARD J. GATON,<br>and EDWARD STIEFEL, JR.<br><br>        Defendants. | **DEFENDANTS' MEMORANDUM IN<br>SUPPORT OF MOTION TO DISMISS<br>OR, ALTERNATIVELY, FOR<br>TRANSFER OF VENUE** |

Defendants BDI Pharma, Inc. ("BDI"), Richard J. Gaton ("Mr. Gaton"), and Edward Stiefel, Jr. ("Mr. Stiefel") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit the following Memorandum in Support of their Motion to Dismiss or, Alternatively, for Transfer of Venue (the "Motion").

## I.    INTRODUCTION

Defendants respectfully move the Court to dismiss Plaintiff William Dillon's ("Plaintiff") Complaint, and to transfer this case to the District of South Carolina, for three independent but interrelated reasons: (A) this Court lacks personal jurisdiction over Defendants; (B) this District is an improper venue for this case; and (C) alternatively, the convenience of witnesses and interests of justice strongly favor transfer of this South Carolina dispute to a South Carolina forum.

The sole connection linking this case to the State of North Carolina is Plaintiff's permanent residence within this District. Plaintiff served briefly as an executive at BDI's Columbia, South Carolina headquarters, and he claims in this case that BDI and its cofounders, South Carolina residents Mr. Gaton and Mr. Stiefel, denied him a substantial discretionary bonus paid solely to then-current BDI employees several months after Plaintiff's termination from BDI. This South

Carolina-based wage payment dispute has no substantial connection to this District. Defendants' attenuated contact with Plaintiff in North Carolina, limited to those occasions he unilaterally chose to work remotely from his North Carolina residence (rather than his BDI-provided South Carolina residence), do not create the minimum purposeful contacts necessary to support the Court's exercise of specific personal jurisdiction over Defendants in this action.

In the absence of a clear jurisdictional basis to preserve venue in this District, Defendants' due process rights and fundamental fairness warrant the Court's transfer of this matter to the District of South Carolina, where this employment dispute arose, where Defendants and substantially all material evidence and witnesses are located, and where the interests of justice are best aligned to bring this dispute to an efficient and expeditious resolution.

For these reasons, Defendants respectfully request that this Motion be **GRANTED**, that the Court find that Plaintiff has failed to make a *prima facie* showing of the propriety of personal jurisdiction and venue in this District, and that this action be **TRANSFERRED** to the United States District Court for the District of South Carolina for all further proceedings.

## II.  RELEVANT FACTS

BDI is a South Carolina pharmaceutical corporation with its corporate headquarters and principal place of business in Columbia, South Carolina. (Complaint, ECF 1-1, p. 5, ¶ 2.)[1]  Mr. Stiefel[2] and Mr. Gaton[3] are BDI's cofounders and also reside in Columbia, South Carolina. (*Id.* ¶¶ 4-7; Stiefel Dec. ¶¶ 2-3; Gaton Dec. ¶¶ 2-3.)

---

[1] Citations to relevant portions of Plaintiff's Complaint, as filed with the Court as ECF Docket Entry 1-1, are hereinafter cited as (ECF 1-1, p. X, ¶ X.)  Citations to relevant portions of the Declaration of Edward Stiefel, Jr. are hereinafter cited as (Stiefel Dec. ¶ X.)  Citations to relevant portions of the Declaration of Richard J. Gaton are hereinafter cited as (Gaton Dec. ¶ X.).
[2] Declaration of Edward Stiefel, Jr. is attached hereto as Exhibit 1.
[3] Declaration of Richard J. Gaton is attached hereto as Exhibit 2.

In October 2014, BDI offered Plaintiff the position of Chief Commercial Officer at BDI's headquarters in Columbia, South Carolina. (ECF 1-1, p. 6, ¶¶ 14-15.) Plaintiff's permanent residence was then, and is now, within this District. (*Id.* ¶ 1.) However, Defendants expressly informed Plaintiff that his position with BDI would be based in South Carolina and that he would be responsible for spending the majority of his work time at BDI's Columbia headquarters. (Stiefel Dec. ¶ 6; Gaton Dec. ¶ 6.) BDI offered to provide Plaintiff with a Columbia residence and car allowance to facilitate his full-time work expectation in South Carolina. (*Id.* ¶¶ 7.) Plaintiff accepted those terms. (*Id.*)

During those negotiations and throughout his employment with BDI, Defendants never met in-person with Plaintiff in North Carolina regarding his employment. (*Id.* ¶¶ 8.) Plaintiff spent the majority of his working time at BDI's headquarters in South Carolina, where all employment-related communications and work instructions from Defendants were centered. (*Id* ¶¶ 9.) Plaintiff periodically traveled to various locations on BDI's behalf, and, when feasible and consistent with his duties to BDI in Columbia, Plaintiff was permitted to work remotely, including, at his discretion, from his permanent residence in North Carolina, typically one day per week. (*Id.*)

Plaintiff's claims in this case arise out of certain compensation he claims to be owed following the termination of his employment with BDI in South Carolina. On or about December 16, 2015, in a meeting in BDI's Columbia headquarters, BDI terminated Plaintiff's employment for performance reasons. (ECF 1-1, ¶ 29; Stiefel Dec. ¶ 12; Gaton Dec. ¶ 12.) In this lawsuit, Plaintiff claims that, pursuant to the terms of BDI's 2015 Discretionary Bonus Plan (the "2015 Bonus Plan), he was allegedly entitled to a substantial monetary bonus from BDI in the amount of $346,686.65 which BDI allegedly failed to pay. (ECF 1-1, ¶¶ 18-20, 32-36.) However, Plaintiff concedes that the bonus was discretionary, that it was based primarily (90%) on BDI's financial

performance, and that Defendants did not elect to pay any bonuses under the 2015 Bonus Plan until months after his termination. (*Id.* ¶¶ 19, 21, 32.)

In September 2016, Plaintiff filed an administrative wage complaint with the North Carolina Department of Labor ("NCDOL") asserting the same claims he makes in this case. (Stiefel Dec. ¶ 13; Gaton Dec. ¶13.) BDI responded to Plaintiff's complaint and, among other things, asserted that the NCDOL lacked jurisdiction over this dispute because BDI, as a South Carolina employer which employed Mr. Dillon within South Carolina, was not subject to the North Carolina Wage and Hour Act enforced by the NCDOL. (*Id.*) After submitting information to the NCDOL regarding the substantial nature of Plaintiff's work activities in South Carolina, the NCDOL agreed with BDI and dismissed Plaintiff's administrative wage complaint for lack of jurisdiction. (*Id.* ¶¶ 14.)

With this Motion, Defendants assert that this dispute with Plaintiff lacks any substantial connection to this District sufficient to support the Court's exercise of specific personal jurisdiction over Defendants, and that this case should be transferred to the District of South Carolina. Defendants are all located in South Carolina, Plaintiff was employed by BDI in South Carolina, all employment-related decisions giving rise to this dispute, including Plaintiff's termination and the related decision regarding his ineligibility for a bonus under the 2015 Bonus Plan, occurred in South Carolina, and all documentary evidence and substantially all of the material witnesses in this case are located in South Carolina. (Stiefel Dec. ¶ 15; Gaton Dec. ¶15.) Moreover, the bonus Plaintiff seeks is located in South Carolina, and any judgment Plaintiff ultimately obtains in this lawsuit will necessarily be satisfied in South Carolina. (*Id.* ¶¶ 17.)

## III.     LEGAL STANDARD

### A.     Motion to Dismiss for Lack of Personal Jurisdiction: Rule 12(b)(2)

When the Court considers a question of personal jurisdiction, the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction. *Universal Leather, LLC v. Koro AR, S.A.,* 773 F.3d 553, 558 (4th Cir. 2014) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 276 (4th Cir. 2009)). The Court is not restricted to a review of plaintiff's pleadings. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 62 (4th Cir. 1993). Rather, the Court may also consider affidavits or other sworn statements submitted by defendant in support of its motion. *Id.* The plaintiff may not rest on mere conclusory allegations to support the existence of jurisdiction. *See McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983). A plaintiff must come forward with affidavits or other evidence to counter the defendant's arguments. *See id.* (affirming dismissal under Rule 12(b)(2) where, "[a]gainst the defendants' affidavits," a plaintiff "offered nothing beyond his bare allegations that the defendants had ... significant contacts" with the forum state).

### B.      Motion to Dismiss for Improper Venue: Rule 12(b)(3)

A defendant may move to dismiss any claim on the grounds of improper venue. Fed. R. Civ. P. 12(b)(3). Venue is proper: "(1) in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if no other proper district exists, any district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Hess v. McBride,* 2015 WL 4740792, at *2 (E.D.N.C. Aug. 10, 2015) (citing 28 U.S.C. § 1931(b)).

### C.      Motion for Transfer of Venue: 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. 1404(a). "The question of transfer under § 1404(a) is a matter resting in the sound discretion of the District Judge." *Kyle v. McDougall*, 2014 WL 4728816, at *5 (E.D.N.C. Sept. 23, 2014) (citing *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956)).

## IV.     ANALYSIS

### A.     Plaintiff's Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant only to the extent provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997). Because Defendants are not residents of North Carolina, this Court cannot assert personal jurisdiction over Defendants under North Carolina law unless: (1) the exercise of jurisdiction is authorized by North Carolina's long-arm statute; and (2) the exercise of personal jurisdiction comports with Fourteenth Amendment due process requirements. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001). "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause," so the two-prong inquiry merges into a single constitutional inquiry. *Id.*

The constitutional inquiry under the Fourteenth Amendment's Due Process Clause asks whether Defendants have sufficient "minimal contacts with the forum state [such] that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Plaintiff must establish Defendants' "minimum contacts" with North Carolina through one of two "paths":

> The first path is "specific jurisdiction," which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit. The second path is "general jurisdiction," which requires a "more demanding showing of continuous and systematic activities in the forum state."

*Universal*, 773 F.3d at 558–59 (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.,* 682 F.3d 292, 301 (4th Cir. 2012)).

### 1. <u>Plaintiff fails to establish general jurisdiction over Defendants.</u>

Plaintiff's mere allegation that BDI distributes pharmaceutical products in North Carolina falls far short of establishing the "continuous and systematic" contacts with the state needed to support a finding of general jurisdiction. To satisfy due process, a plaintiff asserting general or "all-purpose" jurisdiction must establish that the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Ricks v. Armstrong Int'l, Inc.,* 2014 WL 2873189, at *1 (E.D.N.C. June 24, 2014) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 754, 761 (2014)) (internal citations and quotation marks omitted). The consequences of general jurisdiction are significant: "[a] court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Given its broad implications, "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State." *Id.* (citing *Daimler*, 134 S.Ct. at 760) (internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924.

There is no dispute that Defendants are domiciliaries and residents of South Carolina only. Specifically, Plaintiff admits that BDI is a resident of South Carolina because it is incorporated and maintains its principal place of business in South Carolina. (ECF 1-1, p. 5, ¶ 2.) Plaintiff also admits that the individual defendants, Mr. Gaton and Mr. Stiefel, are citizens and residents of South Carolina. (*Id.* ¶¶ 4, 6.) Thus, the only "paradigm forum" for the exercise of general jurisdiction over Defendants collectively is the State of South Carolina.

Plaintiff's Complaint does not allege—and there are no facts to support—that any of the Defendants have such "continuous and systematic" contacts with North Carolina to warrant the exercise of general jurisdiction in this state. Plaintiff alleges only that BDI distributes pharmaceutical products "throughout the United States, including Wake County, North Carolina." (*Id.* ¶ 9.) But the U.S. Supreme Court has long held that the sale of products in a forum state— even in substantial volumes—is insufficient to support the assertion of general jurisdiction. *See, e.g., Daimler*, 134 S.Ct. at 761-62 (holding that defendant's substantial and regular sales in the forum state did not warrant general jurisdiction because "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit") (internal citations and quotation marks omitted). Thus, Plaintiff fails to demonstrate a *prima facie* case of general jurisdiction over Defendants in North Carolina.

2.       **Plaintiff fails to establish specific jurisdiction over Defendants.**

This Court lacks specific jurisdiction over Defendants because there is no connection between North Carolina and the wage payment dispute at issue in this case. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum

State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780-81 (quoting *Goodyear*, 564 U.S. at 918). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781 (citing *Goodyear*, 564 U.S. at 931, n. 6, 131 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales")).

The Fourth Circuit has noted that "[f]airness is the touchstone of the jurisdictional inquiry," and it employs a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process. *Tire Eng'g,* 682 F.3d at 301-02. Under the Fourth Circuit's three-part test, courts analyze: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* at 302 (internal citation omitted).

(a)     Plaintiff cannot establish purposeful availment.

The "purposeful availment" prong of the specific jurisdiction test is "not susceptible of mechanical application." *Consulting Eng'rs*, 561 F.3d at 278. The Fourth Circuit has noted that this analysis is "flexible," and depends on a number of factors that courts may consider on a case-by-case basis.[4] *Tire Eng'g,* 682 F.3d at 302. The Fourth Circuit has generally held that "a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state

---

[4] Factors that Fourth Circuit courts generally consider in the business context include: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs,* 561 F.3d at 278.

when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" *Universal*, 773 F.3d at 560 (quoting *Tire Eng'g,* 682 F.3d at 302). "In contrast, we typically have found such purposeful availment lacking in cases in which the locus of the parties' interaction was overwhelmingly abroad." *Id.* (internal quotation marks omitted).

As a threshold matter, Plaintiff's allegation that BDI distributed pharmaceutical products in North Carolina is irrelevant to the question of "purposeful availment," because Plaintiff's claims arise out of his employment, not out of BDI's alleged distribution of products in North Carolina. Indeed, the U.S. Supreme Court recently held that a defendant's pharmaceutical sales in the forum state were insufficient to support specific jurisdiction when the plaintiffs' claims were unrelated to those sales occurring in that forum state. *Bristol-Myers*, 137 S. Ct. at 1780-81 (holding that pharmaceutical company's "general connections" and "continuous activity" in California were "not enough to support the demand that the corporation be amenable to suits [in California] unrelated to that activity," specifically including the sale of the same products to nonresident plaintiffs in other states).

Although BDI distributes some products in this state, Defendants maintain no corporate offices in North Carolina and made no in-person contact with Plaintiff regarding the terms of his employment in North Carolina. (*See* Stiefel Dec. ¶ 8; Gaton Dec. ¶ 8.) BDI initially communicated with Plaintiff regarding his potential employment while he lived in North Carolina, but Plaintiff's employment would not be, and was not, based in North Carolina. In fact, BDI provided Plaintiff with a furnished residence and monthly car allowance to facilitate his performance of his job out of BDI's Columbia, South Carolina headquarters. (*See* ECF 1-1, p. 13; Stiefel Dec. ¶ 7; Gaton Dec. ¶ 7.) Like other executives, Plaintiff occasionally performed his work duties remotely,

whether from his permanent home or otherwise, at his discretion and subject to the day-to-day demands of his position. (Stiefel Dec. ¶¶ 7, 9; Gaton Dec. ¶¶ 7, 9.) However, Plaintiff's job and office were at all times based in South Carolina, his work was directed by Defendants from South Carolina, and he was expected to spend—and did spend—the majority of his work time to BDI's office in South Carolina. (*Id.*) As a result, the sole connection between Plaintiff's employment with BDI and the State of North Carolina is that Plaintiff chose to maintain his permanent residence in North Carolina, and occasionally chose to work remotely (typically one day per week) from that residence rather than his BDI-provided office or residence in South Carolina.

Plaintiff's personal and unilateral contacts with North Carolina during his employment are insufficient to establish that Defendants purposefully availed themselves of the privilege of doing business in North Carolina. The law recognizes "an important distinction. . . between alleged contacts with a forum arising simply from a plaintiff's location and promise to perform some services there, on the one hand, and situations where a defendant has purposefully directed activities toward the state, on the other hand." *Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furn. Corp.,* 825 F. Supp. 2d 664, 683 (M.D.N.C. 2011) (granting motion to dismiss for lack of personal jurisdiction because the plaintiff "failed to allege the presence of sufficient factors other than its mere presence in the forum to warrant purposeful availment"). This "important distinction" is grounded in the fact that "defendants' contacts with the forum state must be 'purposeful' to support jurisdiction." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).[5]

---

[5] "This 'purposeful' requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws. *Foster*, 278 F.3d at 415 (citing *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

The purposeful availment standard cannot be satisfied by the "unilateral activity" of the Plaintiff or other "attenuated" contact by Defendants with the forum state. *Burger King*, 471 U.S. at 475-76 (internal quotation marks and citations omitted). Specific jurisdiction is proper only "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (emphasis in original). Thus, the mere presence of a plaintiff's residence in a forum will not support personal jurisdiction unless it is "accompanied by the defendant's own contacts with the state." *Pan-Am*, 825 F. Supp. 2d at 685 (citing *ESAB,* 126 F.3d at 626). Otherwise, "jurisdiction would depend on a *plaintiff's* decision about where to establish residence." *Id.* (emphasis in original) (holding that if a plaintiff's mere presence in the forum state were enough, such a theory "would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there").

Thus, Defendants did not "purposefully avail" themselves of the privilege of conducting business in North Carolina merely by employing a North Carolina resident who chose to commute to work in South Carolina. In fact, BDI provided Plaintiff with a furnished Columbia residence so he would *not* have to commute or work remotely from North Carolina *unless* he personally and unilaterally chose to do so. Plaintiff's "unilateral activity" in North Carolina, including periodic remote work from his home by his own volition, is insufficient to support personal jurisdiction absent any purposeful availment by Defendants in this forum. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 452 (4th Cir. 2000) (finding no specific jurisdiction arising from plaintiff's presence and contractual performance in the forum state because the necessity of defendants' contact with the forum state was "incidental to [their] role under the contract" and not the result of purposeful availment).

Because Defendants' attenuated contact with North Carolina, grounded solely upon Plaintiff's residence therein, is insufficient to support a finding of specific jurisdiction, Plaintiff has failed to make a *prima facie* showing of purposeful availment, no further analysis is required, and Defendants are entitled to dismissal for lack of personal jurisdiction.[6]

      (b)    <u>There is no relationship between Plaintiff's claims and Defendants' alleged contacts with North Carolina.</u>

The second prong of the minimum contacts test requires the Court to determine whether Plaintiff's claims against Defendants "arise out of" the activities or contacts allegedly directed by Defendants in North Carolina. *Tire Eng'g,* 682 F.3d at 303. Plaintiff's claims arise out of Defendants' alleged failure to pay Plaintiff a substantial monetary bonus, which he claims to be owed in the "minimum" amount of $346,686.65. (ECF 1-1, p. 8, ¶¶ 33-36.) Where, as here, the dispute arises out of a business or employment "contract," "there must be a 'substantial connection' between the contract and the state" in order to support specific jurisdiction. *Pan-Am. Prod.,* 825 F. Supp. 2d at 683 (citing *Burger King,* 471 U.S. at 479). Plaintiff cannot satisfy this prong because the parties' dispute in this case has no substantial connection—if *any* connection— to conduct Defendants' allegedly directed towards North Carolina.

While BDI directed Plaintiff's written offer of employment to his North Carolina residence (*see* ECF 1-1, p. 11), any alleged employment "contract" created by Plaintiff's acceptance of that offer does not necessarily support a finding of specific jurisdiction, because "an in-state plaintiff's contract with an out-of-state defendant cannot alone automatically establish sufficient minimum contacts to warrant jurisdiction." *Pan-Am. Prod.,* 825 F. Supp. 2d at 681 (citing *Burger King,* 471 U.S. at 478). "Because a contract is 'ordinarily but an intermediate step serving to tie up prior

---

[6] *See Consulting Eng'rs,* 561 F.3d at 278 (stating that the court is not required to consider prongs two and three of the specific jurisdiction analysis if the court finds that the plaintiff failed to establish the first requirement of purposeful availment).

business negotiations with future consequences which themselves are the real object of the business transaction,' the Supreme Court directs that 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 478).

In this case, the "future consequences" of the parties' agreement to the terms of Plaintiff's employment with BDI, "along with the terms of the contract and the parties' actual course of dealing," reflect that Plaintiff's employment was substantially connected to South Carolina, not North Carolina. Plaintiff's job and office were at all times based in South Carolina, his work was directed by Defendants from South Carolina, and he was expected to devote the majority of his work time to BDI's office in South Carolina. The sole connection between Plaintiff's employment and the State of North Carolina was Plaintiff's occasional, unilateral decision to work remotely from his permanent residence in North Carolina, which, as discussed above, cannot constitute "purposeful" contact by Defendants with North Carolina nor support jurisdiction. *Id.* at 682 ("[I]n the absence of a contract that is substantially connected to this state, visits to the state to negotiate a contract and telephone calls and faxes to the state during negotiations do not create specific personal jurisdiction") (internal citations and quotation marks omitted).

Moreover, even if Plaintiff's remote work from his North Carolina home *could* establish "purposeful contacts" between Defendants and this state, the bonus underlying Plaintiff's claims has no "substantial connection" to those alleged North Carolina contacts. Plaintiff admits that ninety percent (90%) of the alleged bonus he seeks was related to BDI's 2015 financial performance, while only ten percent (10%) was related to his personal performance. (ECF 1, p. 7, ¶ 19.) Thus, even if Plaintiff spent half of his working time in North Carolina during his brief

employment with BDI as he claims (which Defendants deny), no more than five percent (5%) of that bonus could have any relationship to Defendants' alleged North Carolina contacts with Plaintiff. The vast majority of that bonus was based instead on BDI's financial performance, which is substantially connected to its headquarters in South Carolina. And, perhaps most importantly to the instant dispute, Defendants' alleged decision to "deny" him that bonus—the focus of the instant dispute—was also made by Defendants within South Carolina. As such, neither Plaintiff's alleged entitlement to the bonus, nor Defendants' alleged decision to deny it, were substantially connected in any material way to North Carolina.

(c)    <u>The exercise of jurisdiction against Defendant would be constitutionally unreasonable.</u>

Even if the Court determines that Defendants purposefully availed themselves of the privilege of doing business in North Carolina and that this dispute "arises out of" those alleged contacts, the Court must still find that the exercise of jurisdiction over Defendants is "constitutionally reasonable." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (quoting *Nolan,* 259 F.3d at 216). This prong is intended to ensure that litigation is not "so gravely difficult and inconvenient as to place ... the defendant at a severe disadvantage in comparison to his opponent." *Id.* (internal citations and quotation marks omitted). Factors relevant to the Court's reasonableness determination include: (1) the burden on Defendants of litigating in North Carolina; (2) the interest of North Carolina in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interest of the states in furthering social policy. *Consulting Eng'rs,* 561 F.3d at 279 (citing *Burger King*, 471 U.S. at 477).

The Court's exercise of personal jurisdiction over Defendants in this matter would be unreasonably burdensome to Defendants. As discussed above, Defendants' contacts with North

15

Carolina—arising only to the extent Plaintiff unilaterally chose at times to work remotely from his permanent residence in North Carolina, rather than his office or BDI-provided residence in South Carolina—are so attenuated as to impose a manifest injustice on Defendants to hale them to court in this forum. The fact that BDI has no corporate offices or employees based in North Carolina, and that it provided Plaintiff with a residence near its headquarters in Columbia, clearly reflect that Defendants reasonably considered Plaintiff not a North Carolina employee, but a South Carolina employee who chose to maintain a permanent residence in North Carolina. Defendants could not reasonably foresee that the mere hiring of a North Carolina resident for a South Carolina job would render them susceptible to jurisdiction in a forum where they directed no purposeful or meaningful contacts with that employee.

By contrast, the precise facts giving rise to this jurisdictional dispute reflect that Plaintiff can obtain equally "convenient and effective" relief in South Carolina, where Defendants employed Plaintiff and *could* reasonably foresee being haled to court in this employment dispute. Plaintiff accepted an employment position with BDI knowing that his job was located in Columbia, South Carolina. Plaintiff unilaterally chose to maintain his permanent residence in North Carolina and commute to Columbia on a weekly basis to perform his work, despite the fact that BDI provided him with a residence in Columbia. Clearly, Plaintiff considered this arrangement to be sufficiently convenient, and the position with BDI to be sufficiently attractive, to warrant his acceptance of the position despite its distance from his permanent home. In a balance of the equities, Plaintiff can hardly claim now that resolving his employment dispute in South Carolina— where he purposefully chose to be employed—would be more inconvenient or burdensome to him than resolving this dispute in North Carolina—where Defendants have no purposeful or substantial connections—would be for Defendants.

Moreover, this is not a case in which North Carolina has a strong social or policy interest in adjudicating this dispute; in fact, this case presents precisely the opposite. North Carolina has a substantial interest in "the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of [state] law." *CFA*, 551 F.3d at 297 (holding that "where the pleaded causes of action are based in North Carolina law, and require the application thereof, the state has a sufficient interest in the outcome of this litigation to make litigation here constitutionally reasonable").

But, in this case, the North Carolina Department of Labor ("NCDOL") expressly ruled that North Carolina did **not** have an interest in resolving Plaintiff's instant wage payment claims because Plaintiff's employment was in South Carolina and thus outside its jurisdictional authority. In September 2016, Plaintiff filed an administrative wage complaint with the NCDOL based on the same allegations asserted here: that Defendants violated the N.C. Wage & Hour Act (the "Act") by failing to pay Plaintiff a bonus that he claimed to be owed after his termination. (Stiefel Dec. ¶ 13; Gaton Dec. ¶ 13.) Through counsel, BDI responded to the NCDOL with a jurisdictional challenge to Plaintiff's administrative complaint on the grounds that Plaintiff's residence and remote work in North Carolina did not make BDI a North Carolina employer subject to the Act or to the NCDOL's investigatory jurisdiction. (*Id.*) Following an investigation, the NCDOL agreed and dismissed Plaintiff's complaint, finding that "the allegation filed by [Plaintiff] was not substantiated as we determined that [BDI] is not subject to the North Carolina Wage and Hour Act." (*Id.* ¶¶ 14.)

The fact that the NCDOL found Plaintiff's claims to be outside the scope of the Act and thus outside its regulatory authority is strong persuasive authority that North Carolina lacks a substantial interest in resolving this dispute, considering that the NCDOL is charged with

regulating state wage payment law and interpreting the Act on which Plaintiff's claims are based. While the NCDOL's ruling may not be binding upon this Court's jurisdictional analysis, Defendants respectfully submit that it would be constitutionally unreasonable to subject Defendants to the jurisdiction of this Court when the state clearly shares Defendants' belief that this is a South Carolina dispute, not a North Carolina dispute.

For these reasons, Defendants respectfully requests that the Court dismiss Plaintiff's Complaint against Defendants for lack of personal jurisdiction, upon a finding that Plaintiff failed to make the requisite *prima facie* showing of minimum purposeful contacts to reach this stage of the analysis, or, alternatively, that the exercise of specific personal jurisdiction over Defendants is constitutionally unreasonable.

### B.    Plaintiff's Complaint Should Be Dismissed For Improper Venue.

To the extent the Court finds that this case is not subject to dismissal for lack of personal jurisdiction, Defendants submit that Plaintiff's Complaint should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  Venue is proper in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).

### 1.    Defendants' residency does not support venue in this District.

Venue is not proper in this District under § 1391(b)(1) because Mr. Gaton and Mr. Stiefel are not residents of the State of North Carolina.  For venue purposes, "natural persons" are

residents solely of the district in which they are domiciled. 28 U.S.C. § 1391(c)(1). Mr. Gaton and Mr. Stiefel are both "natural persons," and there is no dispute that they are both residents and domiciliaries of South Carolina. (*See* ECF 1-1, p. 5, ¶¶ 4, 6.) Thus, venue cannot be proper in this District, because "all defendants" are not "residents of the State in which the district is located."[7]

2. <u>**The events or omissions giving rise to Plaintiff's claims did not occur in this District, nor is the disputed bonus situated in this District.**</u>

Venue is not proper in this District under § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim" did not occur in this District, nor is a "substantial part of property that is the subject of the action" situated in this District.

The events or omissions giving rise to Plaintiff's claims consist of Defendants' alleged failure to pay Plaintiff a bonus several months after the termination of Plaintiff's employment from BDI. (*See* ECF 1-1, pp. 7-8, ¶¶ 29, 32-33.) None of those events or omissions, much less a "substantial part," occurred within this District; these events or omissions occurred entirely within the District of South Carolina, where all Defendants reside, where BDI maintains its corporate headquarters, and where any decisions as to whether Plaintiff was entitled to or should be paid a bonus were made. (Stiefel Dec. ¶ 15; Gaton Dec. ¶ 15.) Similarly, to the extent the allegedly unpaid monetary bonus is the "property that is the subject of the action," that bonus money is not situated in this District, but is instead in the possession of Defendants, all of whom reside in the District of South Carolina. (*Id.* ¶¶ 17.)

---

[7] As a corporate entity, BDI's "residence" for venue purposes includes "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C.A. § 1391(c)(2). As discussed above, Defendants' deny that the Court has personal jurisdiction over any Defendants, including BDI, and assert that personal jurisdiction (and venue) are proper only in the District of South Carolina. However, because the Court's acceptance of Defendants' personal jurisdiction argument would moot the issue of improper venue, Defendants' argument related to improper venue focuses on grounds for dismissal independent of their personal jurisdiction challenge.

19

Thus, venue cannot be proper in this District, because the "substantial part" of the events or omissions giving rise to Plaintiff's claims did not occur in this District, nor is the property at issue in this action located in this District.

3. **The venue "catch all" does not apply because venue is proper in the District of South Carolina.**

Venue is not proper in this District under § 1391(b)(3) because that subsection applies only "if there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3). This subsection is inapplicable in this case because venue is proper in the District of South Carolina under both § 1391(b)(1) and § 1391(b)(2), as discussed above. Indeed, Plaintiff expressly alleges that all Defendants are residents of the District of South Carolina (ECF 1-1, p. 5, ¶¶ 2, 4, 6) such that venue is indisputably proper in that district. *See id.* § 1391(b)(1). Thus, the "catch all" venue provision set forth in § 1391(b)(3), permitting venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," need not be considered by the Court.

4. **This case should be transferred to the District of South Carolina.**

When a case is pending in an improper venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." 28 U.S.C. § 1406(a). Because Defendants concede that jurisdiction and venue are proper in the District of South Carolina (but are not proper in this District), Defendants respectfully request that this case be transferred to the District of South Carolina, where this dispute arose and where all or substantially all material witnesses and documentary evidence are located. *Hess*, 2015 WL 4740792, at *3 (ruling that despite lack of proper personal jurisdiction and venue in this District, "the interest of justice weighs in favor of a transfer" to the defendant's state of residence, where "the property in issue, as well as all material witnesses are located").

**C.** **Alternatively, Justice Favors Transfer of Venue to the District of South Carolina.**

To the extent the Court denies Defendants' motions to dismiss on jurisdictional and/or venue grounds,[8] Defendants alternatively move the Court to transfer this case to the District of South Carolina, as doing so will serve the parties' collective interest in resolving this litigation as expeditiously and efficiently as possible.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[9] This provision embodies "the common-law doctrine of *forum non conveniens,* under which a court in appropriate circumstances may decline to exercise its jurisdiction in the interest of the 'easy, expeditious and inexpensive' resolution of a controversy in another forum." *Burger King*, 471 U.S. at 478 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509 (1947)); *see also Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (holding that the statute provides the court with the discretion to transfer venue when necessary to "prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense").

---

[8] While Defendants seek dismissal of this case due to the lack of personal jurisdiction and improper venue in this District, Defendants note that the Court may consider and resolve Defendants' motion for transfer of venue without first resolving their jurisdictional challenges, because the Court does not need personal jurisdiction to transfer venue under § 1404(a). *See, e.g., Memsys, Inc. v. Act Tech. Seed Fund, L.L.C.,* 2010 WL 2402846, at *2 (E.D.N.C. June 14, 2010) (granting defendants' motion for transfer of venue while denying defendants' jurisdictional motion as moot in light of transfer).

[9] There is no dispute that venue would be proper in the District of South Carolina, as Plaintiff concedes that all Defendants are residents of South Carolina. *See* 28 U.S.C. § 1931(b)(1).

Generally,"[d]istrict courts… consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Services, Inc.,* 791 F.3d 436, 444 (4th Cir. 2015). However, "[a] motion to transfer demands a holistic analysis." *Memsys*, 2010 WL 2402846, at *2. The Court need not give equal weight to each factor; the transfer analysis is "qualitative, not quantitative." *Nacco Materials Handling Grp., Inc. v. Lilly Co.,* 2011 WL 2119097, at *3 (E.D.N.C. May 25, 2011). "Much necessarily must turn on the particular facts of each case, and the trial court must consider and balance all the relevant factors to determine whether or not the litigation would proceed more conveniently and the interests of justice be better served by transfer to a different forum." *Memsys*, 2010 WL 2402846, at *2 (internal citation and quotation marks omitted).

### 1. **Plaintiff's choice of venue is not entitled to weight.**

Despite the "general rule" that "[P]laintiff's choice of venue is entitled to substantial weight," *Trustees*, 791 F.3d at 444, Plaintiff's choice to file this action in North Carolina should not be afforded any degree of deference because, as discussed above, Plaintiff's claims have no material connection to this forum. This Court has noted that "the weight to be given to a plaintiff's choice of venue varies with the significance of the contacts between plaintiff's chosen venue and the underlying cause of action." *NOA, LLC v. Atl. Clothing, LLC,* 2014 WL 3667230, at *8 (E.D.N.C. July 22, 2014) (citing *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1258 (4th Cir. 1991)). If "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *Id.* (internal citations and quotation marks omitted).

Plaintiff's Complaint makes clear that his claims have no relationship to this District. Plaintiff's claims arise entirely from Defendants' alleged failure to pay him a bonus several months after his employment with BDI ended (ECF 1-1, pp. 7-8, ¶¶ 29-36), and those claims have no connection to Plaintiff's unilateral decision to maintain his permanent residence in North Carolina throughout his South Carolina-based employment. To the contrary, Defendants' alleged decision against paying Plaintiff any bonus to which he claims entitlement occurred in the District of South Carolina, where Plaintiff was employed, where all Defendants are located, where BDI maintains its principal place of business, and where all employment and financial decisions regarding BDI personnel are made. (Stiefel Dec. ¶ 15; Gaton Dec. ¶ 15.)

Therefore, Plaintiff's choice to file this lawsuit in North Carolina is not entitled to any deferential weight because this District has no connection to Plaintiff's claims. Defendants' motion should be granted unless the other factors weigh in favor of maintaining venue in this forum. *See, e.g., Nacco*, 2011 WL 2119097, at *3 (ruling that "because the conduct giving rise to the complaint did not occur in North Carolina, [plaintiff's] choice of forum is accorded less weight"); *Weathers v. Univ. of N. Carolina at Chapel Hill*, 2017 WL 1078558, at *2 (E.D.N.C. Mar. 20, 2017) (granting motion to transfer venue because "[o]nly the first factor—plaintiff's choice of venue—weighs against transfer"); *RBC Bank (USA) v. Hedesh*, 827 F. Supp. 2d 525, 532 (E.D.N.C. 2011) (granting motion to transfer venue because only plaintiff's residence and choice of forum weigh in plaintiff's favor, while all other factors were neutral or weighed in favor of defendant).

### 2. Convenience of witnesses and accessibility of evidence favors transfer.

Convenience weighs strongly in favor of transfer of venue in this case because substantially all principal witnesses—except for Plaintiff—and all documentary evidence are located in the

District of South Carolina. The convenience factor considers whether the "center of gravity" of the litigation is within the proposed transferee district. *See, e.g., Branch Banking & Tr. Co. v. S. Tr. Mortg., LLC*, No. 5:14-CV-527-BO, 2015 WL 226078, at *2 (E.D.N.C. Jan. 16, 2015) (transferring venue from this District because all but one principal witness, and all documentary proof, was in the transferee district) (internal citation omitted). This Court has noted that the "convenience of witnesses, most particularly non-party witnesses, who are important to resolution of the case is often cited as the most important factor in determining transfer under § 1404(a)." *Coleman v. New Hampshire*, 2016 WL 6756255, at *4 (E.D.N.C. Oct. 26, 2016), *report and recommendation adopted*, 2016 WL 6683593 (E.D.N.C. Nov. 14, 2016).

With the exception of Plaintiff, substantially all of the witnesses to the relevant issues in this case are located and/or based within the District of South Carolina. Mr. Gaton and Mr. Stiefel are the principal witnesses for BDI with respect to the terms of the bonus allegedly promised to Plaintiff, and they are both located in the District of South Carolina. (Stiefel Dec. ¶ 16; Gaton Dec. ¶ 16.) If Plaintiff establishes that Defendants' promised him a bonus under the criteria he describes,[10] Mr. Gaton, Mr. Stiefel, and other non-party BDI officers—substantially all of whom are located and/or based in the District of South Carolina—will be the witnesses as to whether BDI's financial performance and Plaintiff's personal performance entitled him to a bonus under those criteria. (*Id.*) Similarly, Mr. Gaton, Mr. Stiefel, and other non-party BDI officers and employees—again, substantially all of whom are located and/or based in the District of South Carolina—will be the witnesses as to whether Plaintiff was effectively notified that his entitlement to any alleged bonus was contingent upon his continued employment at the time the bonus was

---

[10] Plaintiff generally claims that he was promised a bonus for which ninety percent (90%) of the bonus related to BDI's 2015 financial performance and ten percent (10%) related to his personal performance in 2015. (*See* ECF 1-1, p. 7, ¶ 19.)

paid. (*Id.*)  The presence of substantially all material witnesses in the District of South Carolina weighs in favor of transfer, regardless of Plaintiff's residence in this District.

The documentary evidence necessary to establish the parties' respective claims or defenses is also located entirely with the District of South Carolina, at BDI's corporate headquarters.  BDI maintains all bonus-related communications with its employees (including those communications providing Plaintiff with notice of the forfeiture terms under the 2015 Bonus Plan), documents related to its 2015 financial performance, and documents related to Plaintiff's personal performance at its corporate headquarters in Columbia, South Carolina.  (Stiefel Dec. ¶ 15; Gaton Dec. ¶ 15.)  BDI has no corporate offices, locations, or property in North Carolina where relevant documentary evidence may be maintained, so any evidence related to Plaintiff's claims which may theoretically exist in North Carolina is solely that which may be within Plaintiff's individual possession and thus readily available to Plaintiff regardless of where this lawsuit is pending.

The "center of gravity" of this case clearly lies within the District of South Carolina, and thus the convenience factors weighs heavily in favor of transfer.  *See, e.g., Memsys,* 2010 WL 2402846, at *3 (granting motion to transfer venue in part because nearly all witnesses, except the plaintiff, lived in or near the transferee district and thus it "would be both less expensive and more efficient to... transfer the case to that district"); *Bannister v. Wal-Mart Stores E., L.P.,* 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) (granting motion to transfer venue in part because "the key witnesses named in [plaintiffs'] complaints are located in [the transferee forum], and there has been no showing that any other potential witnesses in these cases reside in North Carolina").

### 3.  <u>Convenience of the parties favors transfer.</u>

There is no dispute that all Defendants—BDI, Mr. Gaton, and Mr. Stiefel—all reside in the District of South Carolina.  (ECF 1-1, p. 5, ¶¶ 2, 4, 6.)  Only Plaintiff resides in this District,

weighing heavily in favor of transfer to the District of South Carolina, where all other parties are located. *See, e.g., Taylor v. City & Cty. of Honolulu*, 2017 WL 3526660, at *4 (E.D.N.C. Aug. 16, 2017) (granting motion to transfer venue, despite plaintiff's residence in transferor forum, in part because all defendants were located in transferee forum); *Boyd v. Koch Foods*, 2011 WL 2413844, at *3 (E.D.N.C. June 10, 2011) (granting motion to transfer venue in part because plaintiff was the only party resident of North Carolina).

Moreover, Defendants do not merely seek to shift to Plaintiff the "inconvenience" arising from the litigation forum without a valid factual and equitable basis for doing so. The jurisdictional and venue dispute currently before the Court arose because Plaintiff voluntarily accepted an employment position with BDI in South Carolina, thereby accepting the benefits, privileges, and protections of South Carolina law, while also choosing to maintain his permanent residence in North Carolina, notwithstanding BDI's provision of a residence in South Carolina. Defendants did not purposefully avail themselves of the privilege of conducting business with Plaintiff in North Carolina, but precisely the opposite; Plaintiff purposefully availed himself of the privilege of an employment position in South Carolina. By traveling into South Carolina on a weekly basis to perform his job for BDI, Plaintiff clearly demonstrated that he was willing to accept whatever "inconvenience" may have been attendant to that decision.

Thus, as noted above, Plaintiff can hardly claim now that resolving his employment dispute in South Carolina—where he purposefully chose to be employed, where this dispute arose, and where all other parties, witnesses, and evidence are located—would be substantially more inconvenient or burdensome to him than resolving this dispute in North Carolina. *See, e.g., Kyle,* 2014 WL 4728816, at *6 (granting motion to transfer venue in part because plaintiffs' "longstanding working relationship" and employment with defendants in the transferee forum

demonstrated their ability to resolve in the transferee district any "practical problems that make trial of a case easy, expeditious and inexpensive") (internal citation omitted). For these reasons, convenience of the parties weighs heavily in favor of transfer.

### 4. Transfer serves the interests of justice.

Finally, the interests of justice are best served by transfer of this case to the District of South Carolina, for a multitude of reasons. First and foremost, though exhaustively discussed above, it bears repeating that Defendants' alleged conduct giving rise to Plaintiff's claims occurred entirely within the District of South Carolina, where all Defendants are located and where Plaintiff's employment was based. Justice weighs heavily in favor of resolving disputes in the forum where the underlying events occurred. *See, e.g., Durham v. Accelerated Fin. So.,* 2014 WL 6435279, at *2 (E.D.N.C. Nov. 14, 2014) (granting motion to transfer venue in part because "the conduct giving rise to the causes of action in Plaintiff's proposed complaint occurred" in the transferee district); *Branch Banking & Tr. Co. v. S. Tr. Mortg., LLC*, 2015 WL 226078, at *2 (E.D.N.C. Jan. 16, 2015) (same).

Second, this Court has noted "the interest in having the trial of a diversity case in a forum that is at home with the law." *Generation Companies, LLC v. Holiday Hosp. Franchising, LLC*, 2015 WL 7306448, at *10 (E.D.N.C. Nov. 19, 2015) (internal citation and quotation marks omitted). As the NCDOL ruled by dismissing Plaintiff's identical bonus-related wage complaint for lack of personal and subject matter jurisdiction, Plaintiff's claims are properly governed by the South Carolina Payment of Wages Act, not the North Carolina Wage & Hour Act. Therefore, justice weighs in favor of transfer to the District of South Carolina, so that this South Carolina wage dispute under South Carolina law can be resolved in a South Carolina forum. *See, e.g., Memsys,* 2010 WL 2402846, at *4 (granting motion to transfer venue in part because "the more

complicated legal issues" would be determined by the law of the transferee venue); *Generation Companies,* 2015 WL 7306448, at *10 (granting motion to transfer venue of case based on state law claims "to the state that is most familiar with that body of law"). This is particularly true where, as here, North Carolina has clearly identified no "local interest" in resolving Plaintiff's South Carolina-based wage dispute.

Third, this Court has also noted that the "interests of justice implicate the relative congestion of the transferee and transferor courts." *Cherry Tree Farms, LLC v. Runyan*, 2016 WL 7436082, at *5 (E.D.N.C. Dec. 21, 2016) (reviewing Court Management Statistics to evaluate relative congestion in analyzing motion to transfer venue). According to the most recent Federal Court Management Statistics, this District is substantially more congested than the District of South Carolina.[11] Specifically, there are 740 pending cases per judgeship in this District, compared to only 490 pending cases per judgeship in the District of South Carolina. (*See* Attachment 4.) In addition, the median months from filing to trial is 32.3 months in this District, compared to 25.7 months in the District of South Carolina. (*Id.*) These measures of the Court's relative congestion demonstrate that both the public interest, as well as the parties' private interests, weigh in favor of transferring this case to the District of South Carolina as a means of most efficiently and expeditiously resolving this dispute.

Transfer of venue to the District of South Carolina now, at the inception of this case and prior to any responsive pleadings, discovery, or other litigation by the parties, will promote judicial efficiency and avoid needless litigation of jurisdictional issues in favor of proceeding expeditiously and efficiently to the merits of this dispute. *See, e.g., Dacar v. Saybolt LP*, 2011 WL 223877, at

---

[11] A copy of the June 30, 2017 Federal Court Case Management Statistics published by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary is readily and publicly available at http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2017, and a copy is attached hereto as Exhibit 3.

*9 (E.D.N.C. Jan. 24, 2011) (granting motion to transfer venue while noting that the timing of doing so "will not significantly disrupt the litigation or result in a waste of judicial resources"). This is particularly true in a case such as this, in which the Court's personal jurisdiction over Defendants is in serious doubt; the transfer of venue to the District of South Carolina, where Defendants concede that jurisdiction and venue is proper, will avoid any unnecessary further dispute over threshold issues irrelevant to the merits of this case. *See, e.g., Collins v. Reisner*, 2010 WL 4625807, at *2 (E.D.N.C. Nov. 5, 2010) (noting that "[e]ven if venue is proper in the transferor court, transfer may be made... for any reason which constitutes an impediment to a decision on the merits") (citing *Porter v. Groat*, 840 F.2d 255, 257–58 (4th Cir. 1988)).

Because the "center of gravity" in this case is entirely within the South Carolina, Defendants respectfully submit that the interests of justice weigh heavily in favor of transferring venue of this case to the District of South Carolina. See, e.g., *Dacar,* 2011 WL 223877, at *9 ("The court finds that transfer to a more geographically centralized forum which also is the location of the defendants, certain identified key witnesses, and probably most of the evidence, best serves the important private and public interests relevant to venue selection").

## V.   <u>CONCLUSION</u>

For these reasons, Defendants respectfully that this Motion be **GRANTED**, that the Court find that Plaintiff has failed to make a *prima facie* showing of the propriety of personal jurisdiction and venue in this District, and that this action be **TRANSFERRED** to the United States District Court for the District of South Carolina for all further proceedings.

Respectfully submitted this the 16th day of October, 2017.

**NEXSEN PRUET, PLLC**

/s/Alex R. Williams
R. Daniel Boyce
N.C. State Bar No. 12329
Alex R. Williams
N.C. State Bar No. 41679
4141 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: (919) 678-7591
Facsimile:(919) 833-7536
dboyce@nexsenpruet.com
awilliams@nexsenpruet.com

and

*Seeking admission by special appearance:*
David E. Dubberly
James A. Byars
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, SC  29202
PHONE:  803.771.8900
FACSIMILE:  803.253.8277
ddubberly@nexsenpruet.com
jbyars@nexsenpruet.com

*Attorneys for Defendants*
BDI Pharma, Inc., Richard J. Gaton, and Edward
Stiefel, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing Defendants' Memorandum in Support of Motion to Dismiss, or, Alternatively, for Transfer of Venue and attachments using the CM/ECF system, and that a copy of the foregoing was duly served upon Plaintiff's counsel of record by depositing a copy of the same in the United States Mail, first-class postage prepaid, addressed as follows:

> Edward H. Maginnis, Esq.
> Karl S. Gwaltney, Esq.
> MAGINNIS LAW, PLLC
> 4801 Glenwood Avenue, Suite 310
> Raleigh, North Carolina 27601

This 16th day of October, 2017.

**NEXSEN PRUET, PLLC**

/s/ Alex R. Williams

Alex R. Williams
N.C. State Bar No. 41679
4141 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone:     (919) 678-7591
Facsimile:      (919) 833-7536
awilliams@nexsenpruet.com

*Attorneys for Defendants*
BDI Pharma, Inc., Richard J. Gaton, and Edward Stiefel, Jr.